IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TENDER TOUCH REHAB SERVICES, LLC,** | : : : : |
| **Plaintiff,** | : CIVIL ACTION : : |
| v. | : NO. 11-7016 : : |
| **BRIGHTEN AT BRYN MAWR, et al.,** | : : : |
| **Defendants.** | |

**MEMORANDUM OPINION**

**Tucker, J.**                                                                                                 **March \_\_\_, 2012**

      Presently before the Court is a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) by Defendants Saber Healthcare Group, Saber Healthcare Holdings, LLC, and Aviv Healthcare Properties, LP (Doc. 8), and Plaintiff's Response in Opposition thereto (Doc. 10). Upon careful consideration of the parties' submissions, and for the reasons set forth below, Defendants' Motion will be denied.

**I. FACTUAL BACKGROUND**

      Plaintiff Tender Touch brought this action against Defendants asserting claims for breach of contract, account stated, promissory estoppel, unjust enrichment, successor liability, and civil conspiracy. Defendants Saber Healthcare Group and Saber Healthcare Holdings, LLC (together, "Saber Healthcare" or "Saber"), and Aviv Healthcare Properties, LP ("Aviv," and together with Saber, the "Moving Defendants") filed the present motion seeking to dismiss the Complaint against them due to Plaintiff's failure to adequately support its claims for successor liability and civil conspiracy.

The facts, construed in the light most favorable to Plaintiff, are as follows. Tender Touch is a provider of speech, occupational, and physical therapy services ("therapy services"). (Complaint ¶ 2.) In or about August 2010, Tender Touch entered into agreements with Defendants Brighten at Bryn Mawr ("Brighten-Bryn Mawr") and Brighten at Ambler ("Brighten-Ambler") pursuant to which Tender Touch agreed to provide therapy services to nursing home residents at the Brighten Facilities. (Id. at ¶ 18.) In exchange, the Brighten Facilities' owners agreed to compensate Tender Touch for such services. (Id.)

In or around September 2010 through March 2011, Tender Touch provided therapy services to Brighten-Bryn Mawr and Brighten-Ambler patients pursuant to the parties' respective contracts. (Id. at ¶ 22.) Pursuant to these agreements, each Brighten Facility would serve as the Medicare-certified provider of all therapy services Plaintiff provided to Brightens' residents. (Complaint ¶ 21.) Each facility was responsible for billing patients and payors and seeking reimbursement from government and third-party payors for such services. (Id.) Under these agreements, Tender Touch was entitled to receive from Brighten-Bryn Mawr and Brighten-Ambler payments of amounts that it invoiced for services to those nursing facilities. (Id.) Specifically, Tender Touch submitted monthly statements of services to each nursing facility and the facility was obligated to remit payment to Tender Touch in accordance with specified schedules, which had been agreed to by the parties per categories of services. (Id.)

Plaintiff alleges that without excuse or justification, and in breach of the parties' agreements, Brighten-Bryn Mawr and Brighten-Ambler stopped paying Plaintiff for the therapy services performed. (Id. at ¶ 23.) Tender Touch demanded payment on these bills, but to date, both Brighten-Bryn Mawr and Brighten-Ambler have failed and refused to pay the amounts due. (Id. at 24.) The outstanding bills owed to Plaintiff for these services totals approximately $669,000. (Id. at ¶¶ 25-26.)

In or about March 2011, Plaintiff learned that Defendant Saber and its affiliates were planning to take over ownership and/or control of the Brighten Facilities (the "2011 Transaction"). (Id. at ¶ 27, Doc. 10

at 3.) Plaintiff also learned that Defendant Aviv, the Brighten Facilities' landlord and creditor, was involved with Saber in planning and consummating the 2011 Transaction and had significant business dealings with Saber concerning healthcare industry transactions and properties. (Doc. 10 at 5.) Immediately after learning of the proposed transaction, Plaintiff put Defendants Brighten-Bryn Mawr, Brighten-Ambler, Brighten Health, Saber, and Aviv on notice of Plaintiff's concerns related to the transaction and, specifically, Plaintiff's substantial claims for unpaid services. (Id. at ¶¶ 28-29.) By way of its March 25, 2011 letter and related communications, Plaintiff informed Defendants of the specific outstanding amounts owed to Tender Touch and demanded payment of the amounts due. (Id.) In response, Michael G. Menkowitz, Esq., counsel for Defendants Saber and Aviv in this action, confirmed that Aviv was a fellow creditor of the Brighten Entities in addition to being the Brighten Entities landlord. (Doc. 10 at 5.)

Plaintiff unsuccessfully sought additional information from Defendants about the 2011 Transaction. (Id.) Thereafter, Plaintiff submitted a public records request to the Pennsylvania Department of Health, through which it obtained Saber's Nursing Home Licensure Application ("Licensure Application"). (Complaint ¶ 30-31.) In these public records documents, Plaintiff learned that Saber had purchased the Brighten Facilities and was seeking a change of name and change of ownership for the Brighten-Bryn Mawr and Brighten-Ambler Facilities. (Id.) Saber continues to manage the nursing home facilities under the Brighten-Bryn Mawr and Brighten-Ambler names, and employs much of the same management and personnel employed prior to the 2011 Transaction. (Doc. 10-1, Exhibit "A".)

Plaintiff alleges that Defendant Aviv exercised control over certain decision-making and business operations of Brighten-Bryn Mawr and Brighten-Ambler. (Id.) Aviv was the landlord for Brighten-Bryn Mawr and Brighten-Ambler prior to completion of the 2011 Transaction and, along with Saber, was aware of Plaintiff's substantial claim against the Brighten Facilities for unpaid bills. (Complaint ¶ 32, Doc. 10 at 7.) Defendant Aviv admits to having a relationship with Defendant Saber that is more akin to a partnership

than a typical landlord-tenant relationship. (Doc. 10-1, Exhibit "A".) Plaintiff alleges that Aviv acted in concert with the other Defendants to consummate the 2011 Transaction and to consolidate, transfer, or otherwise transform the Brighten-Bryn Mawr and Brighten-Ambler entities, in part, to avoid financial obligations owed to Tender Touch as a creditor of such nursing facilities. (Complaint ¶ 33.)

## II. LEGAL STANDARD

On a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party. See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 (3d Cir. 1994). A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim. See In re Warfarin Sodium Antitrust Litig., 214 F.3d 395, 397-98 (3d Cir. 2000). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer 468 U.S. 183 (1984); Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2000).

While a court will accept well-pled allegations as true for the purposes of a motion to dismiss, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). The United States Supreme Court has recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Bell Atl. Corp. v. Twombly et.al., 550 U.S. 544, 555 (2007). Such allegations are "not entitled to the assumption of truth" and must be disregarded for purposes of resolving a 12(b)(6) motion to dismiss. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009). In Twombly the Court made clear that it would not require a "heightened fact pleading of specifics, but only enough facts to state a claim to relief

that is plausible on its face." Id. at 570. A "pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'" Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993) (citation omitted).

In 2009 the United States Supreme Court revisited the requirements for surviving a 12(b)(6) motion to dismiss in Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009). There the Court made clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice to defeat a Rule 12(b)(6) motion to dismiss. Ashcroft, 129 S. Ct. at 1949. In evaluating whether a Plaintiff has met the pleading requirements, a district court must identify "the 'nub' of the . . . complaint — the well-pleaded, nonconclusory factual allegation[s]." Id. "[O]nly a complaint that states a plausible claim for relief [will] survive[] a motion to dismiss." Id. at 1950.

In light of the decision in Iqbal, the Third Circuit set forth a two-part analysis to be applied by district courts when presented with a 12(b)(6) motion to dismiss. First, the court must separate the legal elements and factual allegations of the claim, with the well-pleaded facts accepted as true but the legal conclusions disregarded. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Second, the court must determine whether the facts alleged in the complaint demonstrate that the plaintiff has a "plausible claim for relief." Id. at 211. If the court can only infer the mere possibility of misconduct, the complaint must be dismissed because it has alleged, but has failed to show, that the pleader is entitled to relief. Id.

**III. DISCUSSION**

    A.    **Plaintiff Has Pleaded Sufficient Facts to Establish a Plausible Claim for Successor Liability Relief Against Defendants Saber Healthcare Group & Saber Healthcare Holdings**

Tender Touch asserts that Saber Healthcare Group and Saber Holdings are liable as successors to Brighten at Bryn Mawr and Brighten at Ambler due to the purchase by the Brighten facilities by the Saber

Defendants. In their Motion to Dismiss, Moving Defendants argue that Plaintiff's claim against Saber Group and Saber Holdings is barred because Plaintiff had no contract with these entities and Plaintiff's allegations of successor liability are merely conclusory, asserting legal elements without providing sufficient facts necessary to support the claims. Viewed as a whole and in the light most favorable to Plaintiff, Plaintiff has alleged sufficient facts to support a prima facie case for successor liability.

It is well-established under Pennsylvania law that, "when one company sells or transfers all of its assets to another company, the purchasing or receiving company is not responsible for the debts and liabilities of the selling company simply because it acquired the seller's property." Cont'l Ins. Co. v. Schneider, Inc., 582 Pa. 591, 599-600 (2005) (citing Hill v.Trailmobile, 603 A.2d 602, 605 (Pa. Super. 1992). This general rule of non-liability can be overcome

> (1) where the purchaser of assets expressly or impliedly assumes the liabilities of the transferor; (2) where the transaction amounts to a *de facto* merger; (3) where the purchasing corporation is merely a continuation of the transferor corporation; and (4) where the transaction is fraudulently intended to escape liability

See Aluminum Co. of America v. Beazer East, Inc., 124 F.3d 551, 565 (3d. Cir. 1997) (citing Philadelphia Electric Co.v. Hercules, Inc., 762 F.2d 303, 308 (3d Cir. 1985)).

The second and third exceptions, mere continuation and *de facto* merger, are very similar doctrines and are generally treated identically. In re Asousa Partnership, 2006 WL 1997426, *9 (Bankr. E.D. Pa. 2006) (citing Berg Chilling Systems, Inc. v. Hull Corp., 435 F.3d 455, 464 (3d Cir. 2006); see also Fiber-Lite Corporation v. Molded Acoustical Products of Easton, Inc., 186 B.R. 603 (E.D.Pa.1994), affirmed mem., 66 F.3d 310 (3rd Cir. 1995)(noting that the continuity exception has functionally been subsumed by the *de facto* merger exception). The mere continuation exception questions whether the asset transfer results in the corporation merely changing its form and ceasing to exist as a legal entity upon the creation of the successor corporation. Id. at 227. The major elements of this exception are identity of the officers, directors, or

shareholders, and the existence of a single corporation following the transfer. Id. The *de facto* merger doctrine identifies four similar factors: (1) continuity of ownership; (2) cessation of the ordinary business by, and dissolution of, the predecessor as soon as practicable; (3) assumption by the successor of liabilities ordinarily necessary for uninterrupted continuation of the business; and (4) continuity of the management, personnel, physical location, and the general business operation. Id.; Commonwealth v. Lavelle, 555 A.2d 218, 228 (Pa.Super. 1989); see also Berg Chilling, 435 F.3d at 468–69. Though each of these factors is considered, they do not all have to be present. Rather, the factors are merely indicia of a *de facto* merger.

In reviewing the evidence in the light most favorable to Tender Touch, it is plausible that the 2011 Transaction was functionally a mere continuation or *de facto* merger of the Brighten Facilities. Saber expressly or impliedly assumed at least some of the Brighten Entities' liabilities necessary to continue uninterrupted operations of the Brighten-Bryn Mawr and Brighten-Ambler Facilities. Prior to taking ownership of the Brighten Facilities, Plaintiff put Saber on notice of its accounts receivable against the Brighten Entities and Plaintiff's intention to make legal claims on that outstanding debt. Additionally, Saber continues to manage the properties under the Brighten-Bryn Mawr and Brighten-Ambler names and continues to employ, uninterrupted, much of the same management and personnel.

In light of Plaintiff's allegations, the Court finds that Plaintiff's successor liability claim against Saber should not be dismissed at this early stage in the litigation. Plaintiff has made repeated attempts to gather information necessary to further substantiate his claims against Saber, including extensive review of public records and multiple requests for information from Defendants. Because the details of the underlying 2011 transaction are solely in the possession of Defendants, it would be inappropriate to preclude Plaintiff from the discovery stage of the proceedings. See, e.g., In re Rockefeller Ctr. Properties, Inc. Sec. Litig., 311 F.3d 198, 216 (3d Cir. 2002). For these reasons, Defendants Saber Healthcare Group and Saber Healthcare Holdings are not entitled to dismissal of Plaintiff's successor liability claim on these grounds.

### B. Plaintiff Has Pleaded Sufficient Facts to Establish a Plausible Claim for Civil Conspiracy Relief Against Moving Defendants

Under Pennsylvania law, "In order to state a civil action for conspiracy, a complaint must allege: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." See McKeeman v. Corestates Bank, N.A., 751 A.2d 655, 660 (Pa. Super. 2000). Additionally, "absent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act." McKeeman, 751 A.2d at 660 (citing Pelagatti v. Cohen, 536 A.2d 1337, 1342 (Pa. Super. 1987) (citation omitted); see also Boyanowski v. Capital Area Intermediate Unit, 215 F.3d 396, 405-406 (3d Cir. 2000) (surveying Pennsylvania appellate authority in holding that a verdict on a civil conspiracy claim must yield to a finding for the defendant on the underlying tort because "the cause of action is wholly subordinate to the underlying tort's existence."); Haymond v. Lundy, 2001 WL 74630, *2 (E.D. Pa. Jan. 29, 2001) (plaintiff must prove separate "underlying tort" as civil conspiracy predicate).

Here, Plaintiff has sufficiently pled the elements of a potential civil conspiracy claim. First, Saber and Aviv admit to working closely on a number of nursing home projects and describe their business relationship as more akin to a partnership than a typical landlord-tenant relationship. Plaintiff alleges that Defendant Aviv exercised control over certain decision-making and business operations at the Brighten Facilities and acted in concert with the other Defendants to unlawfully deprive Plaintiff of money contractually owed him. Second, Saber took overt action in furtherance of this common purpose. In filing their Licensure Applications to the Pennsylvania Department of Health, Saber conceded that they intended to purchase the Brighten Facilities and that the transaction entailed a change in ownership and name. This overt act took place after Plaintiff notified Moving Defendants of the Brighten Facilities' outstanding debt

to Plaintiff. Third, Aviv was a creditor of Brighten Entities and was involved in consummating the 2011 Transaction that resulted in the successor corporation. Fourth, the Court finds it noteworthy that Saber and Aviv have chosen to retain the same attorney to defend this lawsuit. And finally, Plaintiff has suffered actual legal damage caused by Defendants' refusal to pay Plaintiff approximately $669,000 in outstanding debt for services it rendered under the parties' respective agreements.

Moving Defendants argue that Plaintiff "fails to identify the overt acts that Saber Group, Saber Healthcare, and Aviv supposedly committed in furtherance of the alleged conspiracy. (Doc. 8. at 2.) Defendants cite Grigsby v. Kane to support their claim that to prevail on a motion to dismiss Plaintiff must allege the particular period, object, and acts taken in furtherance of the conspiracy. Id. (citing Grigsby v. Kane, 250 F.Supp.2d 453, 458 (M.D.Pa. 2003)). Grigsby, however, is misapplied to this case because that case dealt with conspiracy claims brought pursuant to federal civil rights statutes 42 U.S.C. §§ 1985 and 1986, not civil conspiracy claims under Pennsylvania law, as is the case here. Defendants are correct that under Section 1985 "only allegations which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy, and actions taken in furtherance of the conspiracy, will be deemed sufficient." Grigsby, 250 F.Supp 2d. at 458. However, when Plaintiff alleges civil conspiracy based on an underlying state law tort claim, "[p]laintiffs are not required to set forth a time and place for a conspiratorial meeting or a date upon which the conspiracy began." See L.C. v. Central Pa. Youth Ballet, 2010 WL 2650640, *7 (M.D. Pa. July 2, 2010) (referencing Baker v. Rangos, 229 Pa.Super. 333, 324 (1974)).

Defendants also argue that Plaintiff's civil conspiracy claim against Defendant Aviv must fail as a matter of law because Aviv did not owe Plaintiff any duty in tort or contract, either directly or as a result of successor liability. Defendants rightly note that a claim for civil conspiracy cannot be maintained without an underlying tort. Contrary to Defendant's argument, however, Tender Touch need not allege an underlying tortious claim against every co-conspirator. Civil conspiracy, though typically not an independent cause of

action, is a "mechanism for subjecting co-conspirators to liability when one of their member[s] committed a tortious act." Smith v. Berg, 247 F.3d 532, 539 (3d Cir. 2001) (quoting Beck v. Prupis, 529 U.S. 494, 503 (2000); see also Haymond, 2001 WL 74630 at *2 (recognizing that Fife v. Great Atlantic & Pacific Tea Co., 356 Pa. 265 (1947) has been interpreted as "suggesting there may be a cause of action for civil conspiracy to breach a contract" under Pennsylvania law). As explained above, Tender Touch has pled sufficient facts to state a claim for successor liability against Defendant Saber Healthcare. Plaintiff has also alleged sufficient facts that Saber and Aviv acted in concert to prevent Plaintiff from recovering moneys owed to it. The civil conspiracy claim against Defendant Aviv, therefore, does not fail for this reason.

Viewed in the light most favorable to Plaintiff, it is plausible that Moving Defendants conspired to deny Plaintiff's contractual right to be compensated for the therapy services it provided to residents at the Brighten Facilities. Accordingly, the Court will not dismiss Plaintiff's civil conspiracy claim against Moving Defendants.

**IV. CONCLUSION**

For the reasons set forth herein, Defendants' Motion to Dismiss is denied with respect to Plaintiff's successor liability claim against Defendants Saber Healthcare and Saber Holdings, and Plaintiff's civil conspiracy claim against Moving Defendants. An appropriate Order follows.